Sophie BOTTARO and Frank Bottaro, Webster L. Cowden, Jr., Robert A. Ernset, Laban P. Jackson, Jr., Alfred P. Bergner and Jane C. Bergner, Isidore Bergner, Sheila Rogovin and Mitchell Rogovin, Noel Levine, H. C. Van Lanen, Plaintiffs-Appellants,

v.

HATTON ASSOCIATES, Lanni Mining Enterprises, Inc., Richard E. Guthrie, LVG Associates, GVL Resources, Inc., Jay Landesman, Christopher Castroviejo, Morris P. Silver and Plaia, Schamberg and Taubman, Morton S. Taubman, Peter Houget, Defendants-Appellees.

No. 955, Docket 82–7025.

United States Court of Appeals, Second Circuit.

Argued April 2, 1982.

Decided June 2, 1982.

Douglas G. Thompson, Jr., Washington, D. C. (Finkelstein, Thompson & Levenson, Washington, D. C., of counsel), for plaintiffs-appellants.

Joel S. Stern, Stern, Fixler & Wiener, New York City, for defendants-appellees.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and MISHLER,* District Judge.

WINTER, Circuit Judge:

Plaintiffs appeal from an Order of the United States District Court, for the Eastern District of New York, Edward R. Neaher, J., disqualifying the firm of Finkelstein, Thompson & Levenson (FT&L) from representing plaintiffs in this securities fraud action, 528 F.Supp. 1116. Judge Neaher or-

* Honorable Jacob Mishler, District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

dered FT&L disqualified in light of Disciplinary Rule DR5–102(A) of the American Bar Association (ABA) Code of Professional Responsibility, the so-called lawyer-witness rule. We reverse.

## BACKGROUND

Plaintiffs, holders of limited partnership interests in defendant Hatton Associates, filed their complaint on August 31, 1979, alleging violation of various provisions of the federal securities laws. The crux of the complaint is that defendants induced plaintiffs to purchase their interests by falsely representing that Hatton Associates was operating a coal mine. FT&L have been their attorneys of record throughout this litigation.

One of the plaintiffs, Alfred P. Bergner, a tax lawyer, entered into discussions in the fall of 1979 with FT&L concerning possible affiliation with the firm. On January 1, 1980, he became "of counsel" to FT&L. On January 1, 1981, he became a member of the firm.

On April 24, 1981, Bergner was deposed in this action. He testified that defendant Morris Silver admitted to him that Hatton Associates knew the mine was not operating at the relevant time. Silver has denied these statements. On August 14, 1981, almost four months after Bergner's deposition and near the end of the discovery stage of the case, defendants moved to disqualify FT&L as attorneys for plaintiffs. Judge Neaher granted the motion.

At the outset he ruled that any doubt should be resolved "in favor of disqualification." 528 F.Supp. at 1117. He noted that Bergner was "(1) a plaintiff, (2) a partner in plaintiffs' law firm, and (3) a potential witness" who ought to be called. *Id.* at 1117. Conceding that "plaintiffs' right to freely choose counsel is of paramount importance," *id.* at 1118, Judge Neaher nevertheless deemed this right outweighed by the need to maintain "the ethical integrity of the Bar." *Id.* He found a threat to that integrity in "plaintiffs' trial advocate [being] placed in the objectionable position of arguing the credibility of an attorney in his firm." *Id.* at 6. He concluded that the lawyer-witness rule disqualified FT&L from representing any plaintiffs in this litigation. *Id.* at 1119.

## DISCUSSION

On appeal, defendants advance a position substantially different from that taken in the District Court. Their motion to disqualify FT&L applied to its representation of all plaintiffs, including Bergner. On appeal, defendants now concede Bergner's right as a party plaintiff to select his own counsel, including FT&L.[1] Since FT&L's presence in the litigation is now conceded at least as to representation of one plaintiff, the issue before us is radically different from that raised by the motion before Judge Neaher.

Before turning to that issue, however, we note that Judge Neaher did not apply the correct test for disqualification of counsel. This Court has adopted "a restrained approach," *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980), which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case. *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *McAlpin*, 625 F.2d at 444–446. We have conceded that this test will not "correct all possible ethical conflicts," *McAlpin*, 625 F.2d at 445, but have also noted that this laudable goal cannot be attained through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons. The result would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice. *See id.* at 438, 446. Where a threat of tainting the trial does not exist, therefore, the litigation should proceed, the

1. Appellees' brief states:
   Defendants do not raise an objection to Bergner representing himself or his having his firm represent him in this litigation. The objection relates solely to Bergner and his law firm representing the other plaintiffs....
   Brief for Appellee at 18.

remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar. *Id.*

The present case demonstrates the inadvisability of encouraging motions to disqualify. The motion was filed late in the discovery stage and well after defendants knew of Bergner's possible testimony. They now concede that at least in one critical aspect their motion was baseless, a concession we regard as dispositive as to its entirety. Nevertheless, months of delay in the progress of this litigation has resulted.

■ Defendants' concession as to Bergner's right to choose to be represented by FT&L is well taken in light of 28 U.S.C. § 1654 (1976),[2] and our decision in *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1295 (2d Cir. 1975). Members of the bar have, like all litigants, a right to select their own counsel. While the right may not be absolute, it can be overridden only where compelling reasons exist.

■ The plain implication of *Flanzer* is that a lawyer-litigant-witness such as Bergner may select a law partner as trial counsel. We are assured that Bergner has not and will not play any role in this case as an advocate. DR5–102(A) of the ABA Model Code, however, impacts principally upon two situations: 1) where a lawyer acts both as a witness and as an advocate, and 2) where trial counsel's law partner is a witness but not a party.[3] In *Flanzer,* we stated that DR5–102(A) serves the threefold purpose of avoiding: 1) a situation in which "the public might think that the lawyer [as witness] is distorting the truth for the sake of the client," 2) the possibility that the lawyer will enhance his or her credibility as an advocate by virtue of having taken an oath as a witness, and 3) the "unfair" and "difficult" situation which arises when an opposing counsel must cross-examine a lawyer-adversary and impeach his or her credibility. *Id.* at 1294. These purposes are not implicated when a lawyer is a litigant as well as a witness, but not an advocate, even though a member of his or her firm is trial counsel. The role of the lawyer-litigant-witness is confined to testifying and his or her interest in the outcome of the litigation is clear to the trier of fact. No confusion of role or undue enhancement of advocacy results where the lawyer-witness' lack of disinterestedness is evident from his or her status as a party-litigant. Judge Neaher's disqualification of FT&L was based on his concern over the "objectionable position" of FT&L having to argue the credibility of a member of the firm. Defendants' quite proper concession that FT&L may represent Bergner is necessarily a concession that it

---

2. 28 U.S.C. § 1654 (1976) provides:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

3. Disciplinary Rule DR5–102(A) reads as follows:

Withdrawal as Counsel When the Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR5–101(B)(1) through (4).

Disciplinary Rule DR5–101(B)(1) through (4) reads:

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

may also argue his credibility. Defendants' present position thus wholly vitiates Judge Neaher's reasoning.[4]

■ The sole remaining issue is whether FT&L may represent parties other than Bergner. We see nothing in the lawyer-witness rule suggesting any impropriety in such representation. Ethical standards relating to representation of multiple clients of course apply, *see* ABA Model Code of Professional Responsibility EC5–14–5–20, DR5–105, DR5–106 (1980), but the record contains no inkling that such an issue is present in this case.

Once FT&L is properly in the courtroom as Bergner's attorney, the genie is out of the bottle so far as the lawyer-witness rule is concerned.[5] Even if the other plaintiffs were compelled to hire independent counsel, the new attorneys might well play only a small role in the actual trial, while FT&L bore the laboring oar in arguing the plaintiffs' common cause. Given the fact that FT&L has conducted the discovery and trial preparation to date, this is not an unlikely scenario. If such a major role for FT&L is concededly permissible, we see absolutely no reason to deprive the other plaintiffs of their right to select FT&L as their counsel.

Reversed.

---

**4.** Appellees' reliance on cases such as *MacArthur v. Bank of New York*, 524 F.Supp. 1205 (S.D.N.Y.1981); *Harrison v. Keystone Coca-Cola Bottling Co.*, 428 F.Supp. 149 (M.D.Pa. 1977); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) is misplaced. In those cases, the lawyer-witnesses were not parties.

**5.** Defendants argue that FT&L trial counsel will have their adversarial credibility as counsel for plaintiffs other than Bergner enhanced by his testimonial oath. This is wholly far-fetched. No such enhancement will conceivably result from Bergner's testimony, which will in any event be impeached on grounds of self-interest.